UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KADIJAH ALMARALES,<br><br>       Plaintiff,<br><br>  -against-<br><br>THE CITY OF NEW YORK; P.O. NICHOLAS STOLFARYDER; P.O. JON FELZ; SGT. COURTNEY HAMLIN; TARGET CORPORATION; JOHN/JANE DOES 1-5,<br><br>      Defendants. | Case No.: 1:25-cv-09451<br><br>**COMPLAINT** |

Plaintiff Kadijah Almarales, by her attorneys at Rickner Moskovitz LLP, complaining of the Defendants, alleges, upon information, belief, and personal knowledge:

## NATURE OF THE CASE

1. This is a civil rights action brought against the City of New York, members of the New York City Police Department ("NYPD"), Target Corporation, and individual Target employees, who violated Plaintiff's rights under the Constitution of the United States and the Constitution of the State of New York, and committed torts actionable under the common laws, statutes, and civil rights laws of the State and City of New York, when they caused and carried out the arrest of Plaintiff for an alleged theft crime that never occurred.

2. Upon information and belief, and based on publicly available data, this unlawful conduct was driven by discriminatory and biased-based policing, which led Defendants to profile Plaintiff and presume her guilty of a crime because of her race.

3.    When faced with exculpatory video and documentary evidence that Plaintiff did not steal anything from the Herald Square Target store, Defendants did not release her; instead, they conspired to fabricate evidence implicating her in a theft that never occurred.

4.    Plaintiff, an immigration attorney and Black woman, was arrested on the street near her place of work and then held in the vestibule of the Target store, in plain view of the public, while cuffed, causing severe emotional distress and humiliation.

5.    The embarrassing, unnecessary, and unjustified arrest was a flagrant violation of Plaintiff's Fourth Amendment Rights, as well as her statutory and common law rights, and Defendants are liable, jointly and severally, for compensatory and punitive damages.

## JURISDICTION & VENUE

6.    This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, Plaintiff's rights under Article 1, Section 12 of the Constitution of the State of New York, and the common laws and statutes of the City and State and New York.

7.    Jurisdiction is proper pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under the Constitution of the United States.

8.    Venue is proper in the Federal District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because the claims arose in Manhattan, New York.

9.    An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

10.    Pursuant to New York State General Municipal Law § 50-e, Plaintiff filed a timely Notice of Claim with the New York City Comptroller and the Comptroller designated the claim as number 2025PI015057.

11.     Plaintiff appeared for a hearing under New York State General Municipal Law § 50-h on June 12, 2025.

12.     Plaintiff's claims were not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

## JURY DEMAND

13.     Plaintiff demands a trial by jury.

## PARTIES

14.     Plaintiff KADIJAH ALMARALES ("Plaintiff") is, and was at all times relevant to this action, a resident of Kings County in the State of New York.

15.     Defendant THE CITY OF NEW YORK ("City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department that acts as its agent in the area of law enforcement, for which it is ultimately responsible.

16.     Defendant the City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

17.     Defendant Police Officer NICHOLAS STOLFARYDER (Shield No. 18826, Tax ID No. 975198) (hereinafter "Stolfaryder") was at all relevant times described herein an NYPD officer, employed by the City of New York. At all relevant times, he was acting under color of New York state law, and acting in the course and scope of his duties attendant to his NYPD employment. He is sued in his individual capacity.

18.    Stolfaryder is entitled to indemnification by the City of New York under New York law for any liability arising from his conduct described herein.

19.    Stolfaryder is entitled to indemnification by the City of New York pursuant to contract for any liability arising from his conduct described herein.

20.    Defendant Police Officer JON FELZ (Shield No. 05076, Tax ID No. 972635) (hereinafter "Felz") was at all relevant times described herein an NYPD officer, employed by the City of New York. At all relevant times, he was acting under color of New York state law, and acting in the course and scope of his duties attendant to his NYPD employment. He is sued in his individual capacity.

21.    Felz is entitled to indemnification by the City of New York under New York law for any liability arising from his conduct described herein.

22.    Felz is entitled to indemnification by the City of New York pursuant to contract for any liability arising from his conduct described herein.

23.    Defendant Sergeant Courtney Hamlin, retired (Shield No. 05233, Tax ID No. 932165) (hereinafter "Hamlin") was at all relevant times described herein an NYPD officer, employed by the City of New York. At all relevant times, he was acting under color of New York state law, and acting in the course and scope of his duties attendant to his NYPD employment. He is sued in his individual capacity.

24.    Hamlin is entitled to indemnification by the City of New York under New York law for any liability arising from his conduct described herein.

25.    Hamlin is entitled to indemnification by the City of New York pursuant to contract for any liability arising from his conduct described herein.

26.     Defendant John/Jane Doe No. 1 ("Doe No. 1") was at all relevant times described herein an NYPD officer, employed by the City of New York. At all relevant times described herein s/he was acting under color of New York state law, and acting in the course and scope of the duties attendant to that employment S/he is sued in an individual capacity.

27.     Defendant John/Jane Doe No. 2 ("Doe No. 2") was at all relevant times described herein an NYPD officer, employed by the City of New York. At all relevant times described herein s/he was acting under color of New York state law, and acting in the course and scope of the duties attendant to that employment S/he is sued in an individual capacity.

28.     The true name and shield numbers of Doe Nos. 1 and 2 are not currently known to Plaintiff. However, each is an employee or agent of the NYPD. Accordingly, each is entitled to representation in this action by the New York City Law Department upon their request, pursuant to New York State General Municipal Law§ 50-k. The Law Department, then, is hereby put on notice (a) that Plaintiff intends to name said officers as defendants in an amended pleading once their true names and shield numbers are known; and (b) the Law Department should immediately begin preparing the defense of Doe Nos. 1 and 2.

29.     Defendants Stolfaryder, Felz, Hamlin, and Doe Nos. 1–2 are referred to collectively as the "NYPD Defendants."

30.     At all times relevant herein, the NYPD Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested

in them as officers, agents and employees of the NYPD.

31.     Defendant Target Corporation ("Target") is a Minnesota corporate entity located at Nicollet Mall, Minneapolis, Minnesota, 55403. Target maintains and operates a place of business at 112 W 34th Street, New York, NY 10120. Target is a place of public accommodation under the laws and codes of the State and City of New York.

32.     Defendant John/Jane Doe No. 3, identity unknown, was, at all relevant times, a Target employee working within the scope of his/her employment at the store located at 112 W 34th Street, New York, NY 10120. Upon information and belief, Doe No. 3 was working at the podium of the self-checkout area of the Target store on the date of incident.

33.     Defendant John/Jane Doe No. 4, identity unknown, was, at all relevant times, a Target employee working within the scope of his/her employment at the store located at 112 W 34th Street, New York, NY 10120. Upon information and belief, Doe No. 4 worked in "Asset Protection" for Target on the date of incident.

34.     Defendant John/Jane Doe No. 5, identity unknown, was, at all relevant times, a Target employee working within the scope of his/her employment at the store located at 112 W 34th Street, New York, NY 10120. Upon information and belief, worked in "Asset Protection" or otherwise held a supervisory and/or decision-making role at Target on the date of incident.

35.     The identities of John/Jane Does 3–5 are not currently known to Plaintiff. However, each was, at all relevant times, an agent or employee of Defendant Target Corporation, and was working in the scope of their employment on the date of the incident. Target is liable for the acts of its employees under the doctrine of respondeat superior.

36.    John/Jane Doe Nos. 3–5 are referred to collectively as the "Target Defendants."

## THE VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

37.    Plaintiff Kadijah Almarales ("Plaintiff") is an associate immigration attorney and Black woman who works near Herald Square in Manhattan, New York.

38.     After leaving the office around 6:30 p.m. on March 6, 2025, Plaintiff walked to the Target store near Herald Square in Manhattan to shop for a handful of items.

39.    Plaintiff collected the items in a store basket and proceeded through self-checkout, paying for and bagging the items she was purchasing.

40.    Plaintiff's total was $22.15, which included six items enumerated on her receipt, as well as a .05 cent charge for the Target bag purchased at check out.

41.    Plaintiff paid for all of the items, and obtained a receipt time stamped 6:38 p.m..

42.    After completing check out, Plaintiff placed the receipt in the Target bag with her purchased items and proceeded to exit the store through two sets of double doors.

43.    As she was walking down the public sidewalk toward to subway entrance, Defendants Stolfaryder and Felz approached Plaintiff from behind, grabbed her by the arm, and immediately took the Target bag off of her shoulder and placed her in handcuffs.

44.    Plaintiff asked what was going on, and Stolfaryder responded that she was under arrest because Target had her on camera shoplifting.

45.    Plaintiff, who was stunned by the accusation, immediately told the officers that she had a receipt for all of the items she purchased inside the Target bag.

46.    Neither officer checked the bag, its contents, or the receipt.

47.    After cuffing Plaintiff, the officers led Plaintiff back to Target and held her in the main entryway vestibule of the store between two sets of double doors, leaving her exposed to public view by customers and bystanders in and outside the busy store.

48.    Plaintiff reiterated that the receipt in her bag would demonstrate that all items were purchased before she exited the store.

49.    At no time did Stolfaryder or Felz make any attempt to check the bag or its contents, or review the receipt showing complete payment of the items inside.

50.    Instead, an unknown Target employee came to the front of the store, collected Plaintiff's Target bag without saying anything, and took it to an undisclosed location in the store. Stolfaryder and Felz remained in the vestibule of the building with Plaintiff, who was cuffed with her hands behind her back and was not free to leave.

51.    Upon information and belief, Doe No. 3, who was working at the podium at the self-checkout where Plaintiff paid for her items, was the individual Target employee who radioed back to asset protection and reported a "skip swipe," or item placed in a shopping bag without being scanned.

52.    Upon information and belief, Defendant Hamlin and/or Doe Nos. 1–2 were working inside of the asset protection office of the Herald Square Target, alongside Doe Nos. 4–5, at the time Plaintiff checked out of the store.

53.    After hearing the report from Doe No. 3 over the radio, Hamlin and/or Doe Nos. 1–2 directed Stolfaryder and Felz to stop Plaintiff outside the store.

54.    Upon information and belief, Hamlin and/or Doe Nos. 1–2 and 4–5 were all present in the asset protection office when exculpatory video was reviewed.

55.    The video showed Plaintiff placing *her own lunchbox* inside of the Target shopping bag after paying for the store bought items.

56.    The lunchbox—which was clearly used and could not be mistaken for a new store item—was on Plaintiff's person when she entered the store.

57.    After reviewing the video evidence and the contents of Plaintiff's shopping bag, along with the receipt, Defendants knew that Plaintiff had not stolen anything from Target.

58.    Despite this exculpatory evidence, the decision to arrest Plaintiff was initiated by the Target Defendants and effectuated by the NYPD Defendants, all of whom worked in concert to deprive Plaintiff of her civil rights using false information and evidence.

59.    While the exculpatory video was reviewed, Plaintiff remained cuffed in the vestibule of the store, where Stolfaryder became increasingly indignant and disrespectful to Plaintiff after she stated that she was an attorney and knew her rights.

60.    When Plaintiff asked simple questions about the stop or the shoplifting accusation, Stolfaryder would refuse to answer, or respond sarcastically with comments such as, "well you should know, you're a lawyer."

61.    This condescension and lack of professionalism caused further distress to Plaintiff, who is a respected immigration attorney and member of her community.

62.    The officers' behavior during Plaintiff's arrest and detention also evidences their malicious intent and desire to implicate Plaintiff in a crime regardless of objective facts or the presence or dissipation of probable cause.

63.    Upon information and belief, this "guilty until proven innocent" behavior is consistent with the NYPD's longstanding pattern and practice of discriminatory

enforcement against Black persons for theft crimes.

64.    Such discriminatory policing was exacerbated by the profiling of Target Corp., which has a track record of falsely accusing its Black patrons of shoplifting.

65.    After it became clear that Plaintiff was innocent, no Defendant intervened to stop the unconstitutional arrest.

66.    Instead, one or more of the Target Defendants provided a "training mode receipt" to the NYPD Defendants showing a total of $1.75.

67.    Upon information and belief, such receipts are provided to law enforcement as evidence of the total amount of stolen goods.

68.    The "training mode" receipt was created, likely by Doe No. 3, at 6:45 p.m., just seven minutes after Plaintiff checked out, and, upon information and belief, after the exculpatory video evidence was reviewed.

69.    This training mode receipt was not shown to Plaintiff at any time. Nor was Plaintiff ever told by the Defendants what items she was alleged to have stolen from Target.

70.    The training mode receipt identified the allegedly stolen goods as five fruit items from the grocery, priced at $0.35 each.

71.    At no time was Plaintiff alleged to have stolen the lunchbox that she placed inside the Target shopping bag after paying for her store bought items.

72.    None of the items in Plaintiff's shopping bag totaled $1.75, and all of the store bought items were accounted for on her purchase receipt.

73.    Nevertheless, the NYPD Defendants went on to knowingly use the training mode receipt as false evidence to implicate Plaintiff in the arrest report, authored by

Stolfaryder and approved by Hamlin after Plaintiff's arrest and detention, which read:

> AT TPO OFFICERS ARE INFORMED BY THE R/W THAT THE
> DEFENDANT SELECTED LISTED ITEMS AND CONCEALED
> THEM IN A RED TARGET BAGAND PASSED ALL POINTS OF
> PURCHASE WITHOUT PERMISSION OR AUTHORITY TO DO SO.
> OFFICERS STOPPED DEFENDANT OUTSIDE STORE WITH
> PROPERTY ON HER PERSON. TOTAL VALUE OF PROPERTY $1.75
> USC. SGT HAMLIN ON SCENE.

74.     At no time was Plaintiff "stopped outside [the] store with [stolen] property on her person." This fact was fabricated by Defendants in an effort to falsely inculpate Plaintiff *after* video evidence revealing her innocence was reviewed and known to the Defendants.

75.     The NYPD Defendants went on to forward this false information to the prosecution, identifying the phantom stolen property as five "market items" totaling $1.75.

76.     The NYPD Defendants also claimed in their reports to the prosecutor that they "recovered" these "market goods" from Plaintiff. This too was a lie. No stolen property was found on Plaintiff's person or recovered by Defendants at any time.

77.     Moreover, even if any probable cause was present after review of the exculpatory evidence, the allegations against Plaintiff precluded her custodial arrest under New York State Penal Law § 150.20, which requires the issuance of a ticket on the street for certain offenses, rather than a custodial arrest and transport back to a precinct for fingerprinting and other invasive processing.

78.     The NYPD Defendants' disregard of this change to the law—which the legislature intended to reduce the number of persons detained in police custody—further evidences their indifference to Plaintiff's rights.

79.     While in custody, Plaintiff had to call her employer and report her arrest. This experience further humiliated Plaintiff in the midst of an already traumatic experience.

80.    After several hours in police custody, Plaintiff was released with a Desk Appearance Ticket charging her with one count of Petit Larceny in violation of P.L. 155.25.

81.    Plaintiff was forced to hire a criminal defense attorney to defend her against these false charges. After Plaintiff's attorney spoke to the prosecution about the false nature of the claims and fabricated evidence, the District Attorney's office declined to prosecute Plaintiff, terminating the criminal proceedings in her favor.

## THE NYPD'S LONGSTANDING PATTERN AND PRACTICE OF RACIAL DISCRIMINATION IN THE POLICING OF PETIT LARCENY

82.    For decades, Black New Yorkers have been targeted by the NYPD for enforcement action at astonishingly disproportionate rates.

83.    A ten year study published by the John Jay College of Criminal Justice in 2024 concluded that, in 2022, Black people were 6.1 times more likely than white people to be arrested for any misdemeanor, reflecting little change over the prior decade.[1]

84.    In the first quarter of 2025 alone, when Plaintiff was falsely arrested, the NYPD conducted a total of 33,311 arrests across the five boroughs, including criminal summonses and Desk Appearance Tickets ("DAT"). Of those arrestees, 15,675—over 47%—were Black.[2]

---

[1] Stephen Koppel and Michael Rempel, "Assessing Progress in Reducing Racial Disparities in New York City Law Enforcement, 2013–2022," New York City Police Reform and Reinvention Collaborative, John Jay College of Criminal Justice (March 2024), available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://datacollaborativeforjustice.org/wp-content/uploads/2024/02/Law_Enforcement_Tools_Final.pdf.

[2] NYPD Online, "Desk Appearance Ticket Arrest Analysis Data," First Quarter 2025, available at nyc.gov/site/nypd/stats/reports-analysis/dat.page.

85.    Yet the 2020 census determined that Black individuals make up only 20.2% of the population of New York City, demonstrating a significant disparity in the NYPD's policing and enforcement against the Black population.

86.    The percentage of Black persons arrested for petit larceny specifically, as compared to other groups tracked by the NYPD,[3] mirror this broader trend of discriminatory enforcement and biased-based profiling against Black individuals over the last decade:[4]

   a.   In 2023, 43.2% of persons arrested by the NYPD for petit larceny were Black.

   b.   In 2022, 46.3% of persons arrested by the NYPD for petit larceny were Black.

   c.   In 2021, 45.8% of persons arrested by the NYPD for petit larceny were Black.

   d.   In 2020, 46.2% of persons arrested by the NYPD for petit larceny were Black.

   e.   In 2019, 44.7% of persons arrested by the NYPD for petit larceny were Black.

   f.   In 2018, 45% of persons arrested by the NYPD for petit larceny were Black.

   g.   In 2017, 44.7% of persons arrested by the NYPD for petit larceny were Black.

   h.   In 2016, 40.6% of persons arrested by the NYPD for petit larceny were Black.

   i.   In 2015, 39.2% of persons arrested by the NYPD for petit larceny were Black.

87.    This data, together with data collected by third party advocacy groups and oversight agencies over the last decade demonstrate that, despite being just 20% of the City's population, Black persons account for nearly half of all arrests, including for petit larceny.

---

[3] The NYPD's enforcement data tracks racial and ethnic identities as follows: American Indian, Asian/Pacific Islander, White, and Hispanic. Notably, both Black and white Hispanic persons are counted as "Hispanic" in the data; thus, additional persons perceived as Black by the NYPD at the time of arrest is likely much higher than the data suggest.

[4] NYPD Online, "Crime and Enforcement Reports," Enforcement Report Data Tables 2006–2023, available at nyc.gov/site/nypd/stats/reports-analysis/crime-enf.page.

TARGET CORPORATION'S HISTORY OF RACIALLY PROFILING BLACK CUSTOMERS

88.    Target has a well-founded reputation for profiling its Black patrons and lodging accusations of theft against them without reasonable basis. This discriminatory pattern in retail theft prevention is known in common public parlance as "shopping while Black."

89.    That is, patrons perceived as Black by Target and its staff are treated with suspicion and accused of theft crimes at alarmingly disproportionate rates, often when no crime has been committed.

90.    There is no coherent explanation for these disparities other than discriminatory enforcement based on racial profiling, in violation of state and local law.

91.    For example, in October 2024, a Black woman was profiled by Target staff in Brooklyn, New York for shoplifting unspecified items, just as Plaintiff was here. The woman was cuffed in public view and, despite evidence that no crime was committed, was arrested by the NYPD at the direction of, and in cooperation with, Target and its staff.[5]

92.    In 2023, Target caused the wrongful termination of two Black men falsely accused of stealing from a Target store in Staten Island where they were conducting HVAC work. Without evidence, Target maliciously reported the men to their employer, falsely claiming that they stole a hoverboard from the store, causing both men to lose their union jobs and be defamed in their communities.[6]

93.    In one case of racial profiling, a Black man was not allowed to touch a pair of headphones he was considering purchasing because a Target employee assumed the

_____

[5] *Lee v. City of New York, et. al.*, 25 cv 05492 (E.D.N.Y. 2025).

[6] *Pinell et al. v. Target Corp. et al.*, Index No. 1566125/2024 (Sup. Ct. N.Y. Co.).

shopper would steal the headphones if he did not pay before looking at them.[7]

94.    Another Black shopper was accused of stealing a bikini and was forced to partially undress in front of Target staff before she was permitted to leave. The store in which the incident occurred had regularly made false allegations against its Black patrons.[8]

95.    These few examples shed light on a wider culture of profiling and discrimination against Black shoppers across Target stores, which the store knew or should have known would lead to violations of their patrons' rights if left unaddressed.

96.    By failing to adequately address this pervasive issue, Target caused the wrongful profiling and arrest of Plaintiff for a crime that never occurred.

### FIRST CLAIM FOR RELIEF:
### FALSE ARREST UNDER 42 U.S.C. § 1983
### AGAINST THE NYPD DEFENDANTS

97.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

98.     The NYPD Defendants stopped, restrained, arrested, and detained Plaintiff without probable cause or other lawful authority.

99.     By virtue of the aforementioned acts, Plaintiff was deprived of civil rights guaranteed under the Fourth Amendment to the United States Constitution to be free from

---

[7] Nozicka, L. "West Des Moines man says he was racially profiled at Target in Minnesota," Des Moines Register (Feb. 28, 2018), available at desmoinesregister.com/story/news/2018/02/28/west-des-moines -man-says-he-racially-profiled-target-minnesota/382110002/.

[8] Chuck, E. "Target fires security guard after black customer says she was racially profiled," NBC News (Jun. 4, 2018), available at nbcnews.com/news/nbcblk/target-fires-manager-after-black-wom an-says-she-was-racially-n879866; *see also* "Second woman alleges she was racially profiled at Southfield Target store," WXYZ Detroit (Jun. 11, 2018), available at wxyz.com/news/second-woman-alleges-she-was-racially-profiled-at-southfield-target-store.

unreasonable or unlawful searches and seizures.

100.  As a result of this unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and the NYPD Defendants are liable to Plaintiff for compensatory and punitive damages.

## SECOND CLAIM FOR RELIEF:
## DUE PROCESS VIOLATIONS UNDER 42 U.S.C. § 1983
## AGAINST THE NYPD DEFENDANTS

101.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

102.   The NYPD Defendants provided false evidence and statements to support the false arrest of Plaintiff, including conspiring with the Target Defendants to create a receipt that could serve as evidence of theft, despite the fact that no such theft occurred.

103.  As a result of this unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and the NYPD Defendants are liable to Plaintiff for compensatory and punitive damages.

## THIRD CLAIM FOR RELIEF:
## FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983
## AGAINST THE NYPD DEFENDANTS

104.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

105.  One or more of the NYPD Defendants failed to intervene to prevent, end, or report the unlawful and unconstitutional conduct to which Plaintiff was subjected, despite ample opportunities to do so.

106.  The NYPD thereby displayed deliberate indifference to Plaintiffs rights,

including the right to be free from unreasonable and unlawful searches and seizures.

107.   As a result of this unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and the NYPD Defendants are liable to Plaintiff for compensatory and punitive damages.

**FOURTH CLAIM FOR RELIEF:**
**CIVIL RIGHTS CONSPIRACY UNDER 42 U.S.C. § 1985**
**AGAINST THE NYPD AND TARGET DEFENDANTS**

108.   Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

109.   The NYPD and Target Defendants conspired to violate Plaintiff's civil rights when they fabricated evidence of a theft that never occurred.

110.   Despite contemporaneous, exculpatory video evidence, the Target Defendants involved the NYPD, who ignored the same exculpatory evidence and arrested Plaintiff for a theft crime that never occurred.

111.   The NYPD Defendants conspired with the Target Defendants to create a receipt that could serve as evidence of theft, despite the fact that no such theft occurred.

112.   The NYPD and Target Defendants agreed among themselves and with other individuals to act in concert and thus conspired to deprive Plaintiff of clearly established civil rights, displaying a deliberate indifference to Plaintiff's rights, including the right to be free from unreasonable searches and seizures and the right to due process of law.

113.   As a result of this unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and the NYPD and Target Defendants are liable to Plaintiff for compensatory and punitive damages.

**FIFTH CLAIM FOR RELIEF:**
**STATE LAW ASSAULT**
**AGAINST THE CITY OF NEW YORK AND THE NYPD DEFENDANTS**

114.   Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

115.   The NYPD Defendants intentionally, willfully, and maliciously assaulted Plaintiff in that they had the real or apparent ability to cause imminent harmful or offensive bodily contact, and intentionally did a violent or menacing act which threatened such contact to the Plaintiff, causing apprehension of such contact in the Plaintiff.

116.   The City of New York is liable for the conduct of the NYPD Defendants and any damages they caused under the doctrine of *respondeat superior*.

117.   As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and Defendants are liable to Plaintiff for compensatory and punitive damages.

**SIXTH CLAIM FOR RELIEF:**
**STATE LAW BATTERY**
**AGAINST THE CITY OF NEW YORK AND THE NYPD DEFENDANTS**

118.   Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

119.   The NYPD Defendants intentionally, willfully, and maliciously battered Plaintiff, when they, in a hostile and/or offensive manner, handcuffed Plaintiff without her consent and with the intention of causing harmful and/or offensive bodily contact.

120.   The City of New York is liable for the conduct of the NYPD Defendants and any damages they caused under the doctrine of *respondeat superior*.

121.    As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and Defendants are liable to Plaintiff for compensatory and punitive damages.

### SEVENTH CLAIM FOR RELIEF:
### STATE LAW FALSE ARREST/IMPRISONMENT
### AGAINST ALL DEFENDANTS

122.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

123.    Defendants caused Plaintiff to be falsely arrested, handcuffed, and detained in the absence of probable cause.

124.    Said arrest, confinement, and restraint of liberty was not otherwise privileged.

125.    Plaintiff was conscious of the confinement and did not consent it.

126.    Plaintiff's arrest is *void ab initio* because Plaintiff was taken to a precinct or otherwise taken into custody, rather than being given a summons or other process without such detainment, in violation of New York Criminal Procedure Law § 150.20.

127.    The City of New York is liable for the conduct of the NYPD Defendants and any damages they caused under the doctrine of *respondeat superior*.

128.    Target Corp. is liable for the conduct of the Target Defendants and any damages they caused under the doctrine of *respondeat superior*.

129.    As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and Defendants are liable to Plaintiff for compensatory and punitive damages.

## EIGHTH CLAIM FOR RELIEF:
## STATE LAW MALICIOUS PROSECUTION
## AGAINST ALL DEFENDANTS

130.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

131.  Defendants initiated a prosecution against Plaintiff without probable cause, and with malice, and that prosecution resolved in a complete dismissal of the charges.

132.  Plaintiff was required to retain an attorney to defend against the false charges.

133.  As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

134.  The City of New York is liable for the conduct of the NYPD Defendants and any damages they caused under the doctrine of *respondeat superior*.

135.  Target Corp. is liable for the conduct of the Target Defendants and any damages they caused under the doctrine of *respondeat superior*.

136.  As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and Defendants are liable to Plaintiff for compensatory and punitive damages.

## NINTH CLAIM FOR RELIEF:
## NEGLIGENT SCREENING, HIRING, TRAINING, SUPERVISION AND DISCIPLINE
## AGAINST THE CITY OF NEW YORK AND TARGET CORP.

137.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

138.  The City of New York negligently hired, trained, supervised, and/or disciplined the NYPD Defendants, who the City knew or should have known would engage in unlawful

arrests, particularly against Black individuals, in the absent of probable cause.

139.    The acts and conduct of the NYPD defendants were the direct and proximate cause of injury and damage to Plaintiff's rights under the Constitution of the United States and the Constitution of the State of New York, as described herein.

140.    Target Corp. also negligently hired, trained, supervised and/or disciplined the Target Defendants, who Target Corp. knew or should have known would engage in discriminatory allegations of theft crimes against its Black customers, inevitably causing the false arrest of innocent persons like Plaintiff.

141.    As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and the City and Target Corp. are liable to Plaintiff for damages arising from her false arrest.

### TENTH CLAIM FOR RELIEF:
### RACIAL DISCRIMINATION PURSUANT TO N.Y. EXEC. LAW § 296(2)(A) AGAINST TARGET CORP. AND THE TARGET DEFENDANTS

142.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

143.    Section 296(2)(a) of New York State's Executive Law prohibits discrimination on the basis of race in places of public accommodation.

144.    Target Corp. is a place of public accommodation pursuant to § 292(9) of the law.

145.    Target is liable for the acts and omissions of its agents and employees under the doctrine of *respondeat superior*.

146.    Target Corp. has a longstanding pattern and practice of targeting Black customers, like Plaintiff, for theft crimes within its stores.

147.    This pattern persists despite ample constructive and actual notice that Target employees are engaging in unlawful discriminatory practices.

148.    Target knew or should have known that a failure to adequately address racial disparities in asset protection and theft investigations would cause the unjustified detainment, arrest, and prosecution of Black customers without just cause.

149.    Consistent with this pattern, Plaintiff, a Black woman, was singled out and presumed to have shoplifted by the Target defendants by reason of her race.

150.    Despite exculpatory video and documentary evidence, the Target Defendants coordinated with the NYPD Defendants to implicate Plaintiff in a crime that did not occur.

151.    As a result of this discriminatory conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and Target Corp. and the Target Defendants are liable for compensatory and punitive damages.

### ELEVENTH CLAIM FOR RELIEF:
### VIOLATION OF ARTICLE I, § 12 OF THE NEW YORK STATE CONSTITUTION AGAINST THE CITY OF NEW YORK AND THE NYPD DEFENDANTS

152.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

153.    Such conduct breached the protections guaranteed to plaintiff by the New York State Constitution, including but not limited to, Article 1, §§ 1, 6, 8, 9, 11, and 12, and including the following rights:

    a.   freedom from unreasonable search and seizure of her person and property;

    b.   freedom from arrest without probable cause;

    c.   freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful

detention plaintiff was aware and did not consent;

    d.   freedom from the lodging of false charges against him by police; and

    e.   freedom from deprivation of liberty without due process of law.

154.   The City of New York is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of *respondeat superior*.

155.   As a direct and proximate result of Defendants' deprivations of Plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, Plaintiff suffered physical, economic, and emotional injuries, as well as a deprivation of liberty.

156.   As a result of the above unconstitutional conduct, the NYPD Defendants are liable to Plaintiff for compensatory and punitive damages.

**TWELFTH CLAIM FOR RELIEF:**
**UNREASONABLE SEARCH AND SEIZURE**
**PURSUANT TO N.Y.C. ADMIN. CODE § 8-801 ET. SEQ.**
**AGAINST THE CITY OF NEW YORK AND THE NYPD DEFENDANTS**

157.   Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

158.   Plaintiff's right to be free from unreasonable searches and seizures was violated by the conduct of the NYPD Defendants.

159.   The City of New York is liable as the employer of the NYPD Defendants under New York City Administrative Code § 8-803(b).

160.   Qualified immunity is no defense to this claim.

161.   As a result of Defendants' unlawful conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and Defendant are liable to Plaintiff for compensatory and punitive damages.

## THIRTEENTH CLAIM FOR RELIEF:
## BIASED BASED PROFILING PURSUANT TO N.Y.C. ADMIN. CODE § 14-151 ET. SEQ.
## AGAINST THE CITY OF NEW YORK AND THE NYPD DEFENDANTS

162.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

163.    By initiating law enforcement action against Plaintiff based on her actual or perceived race or ethnicity, rather than her behavior or evidence linking her to unlawful activity, the NYPD Defendants agents engaged in bias-based profiling in violation of N.Y.C. Admin. Code § 14-151(A)(1).

164.    Plaintiff's arrest reflects a broader trend of unlawful and biased based profiling across arrests for minor theft crimes.

165.    Accordingly, Plaintiff is entitled to injunctive and declaratory relief, along with reasonable attorneys' fees and costs.

## FOURTEENTH CLAIM FOR RELIEF:
## RACIAL DISCRIMINATION PURSUANT TO N.Y.C. ADMIN. CODE § 8-107(4)
## AGAINST TARGET CORP. AND THE TARGET DEFENDANTS

166.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

167.    The New York City Human Rights Law prohibits discrimination on the basis of race in places of public accommodation.

168.    Target Corp. is a place of public accommodation pursuant to the City law.

169.    Target is liable for the acts and omissions of its agents and employees under the doctrine of *respondeat superior*.

170.    Target Corp. has a longstanding pattern and practice of targeting Black

customers, like Plaintiff, for theft crimes within its stores.

171.    This pattern persists despite ample constructive and actual notice that Target employees are engaging in unlawful discriminatory practices.

172.    Target knew or should have known that a failure to adequately address racial disparities in asset protection and theft investigations would cause the unjustified detainment, arrest, and prosecution of Black customers without just cause.

173.    Consistent with this pattern, Plaintiff, a Black woman, was singled out and presumed to have shoplifted by the Target defendants by reason of her race.

174.    Despite exculpatory video and documentary evidence, the Target Defendants coordinated with the NYPD Defendants to implicate Plaintiff in a crime that did not occur.

175.    As a result of this discriminatory conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty, and Target Corp. and the Target Defendants are liable to Plaintiff for compensatory and punitive damages.

**WHEREFORE**, Plaintiff demands the following relief, jointly and severally, against all Defendants:

   a.   Compensatory damages;

   b.   Punitive damages;

   c.   The convening and empaneling of a jury to consider the merits of her claims;

   d.   Costs, interest, and attorney's fees;

   e.   Such other and further relief as this court may deem just and equitable.

Dated:   New York, New York
         November 12, 2025

By:   _____

      Stephanie Panousieris
      Rickner Moskovitz LLP
      14 Wall Street, Suite 4C
      New York, New York 10005
      (212) 300-6506
      *Attorneys for Plaintiff*